Judge Lurie, I need to make a motion. We'd be happy to entertain your motion. And so I guess I'm making the motion to the court with you presiding. I'd like to move... I have a law clerk who has served me with great distinction. I'm sure you both recognize Phil Sheng.  He's a lawyer in good standing from the bar of a state that's not in very good standing. Which state's that, Phil? California. California. I'm from Oregon. I like to embarrass California every time I can. But Phil has no cause for embarrassment in anything he's done or probably will ever do. He's brought great credit on the court, and I'd like to move his admission. We'll stay out of the West Coast quarrel, but I'll consult with my colleague. Did you beat him in a tennis match? Is that why he's in California? Yes, I did. That's true, too. I have no objection. Well, there's a presumption of correctness for what the chief judge does, at least with respect to admission of a law clerk. So we will accept the motion, grant the motion. Thank you. Our first cases this morning, we have a series of three cases. Docket numbers 13, 14, 55 through 57 that are power management solutions versus advanced micro, NVIDIA, and Intel. I believe we're going to handle those as, for oral argument purposes, as although they're separate cases, we're going to argue them at this point together. Mr. Harrison? Yes, Your Honor. May it please the court, Brian Harrison on behalf of Power Management Solutions. Your Honors, there are two fairly straightforward issues that are presented by this appeal. The first issue is, what is the proper frame of reference for the terms external and internal? And the second is, does the internal functional circuit function require not only power, but the first electrical input in order to perform that function? The district courts claim construction errors with respect to both of these issues by importing limitations from the embodiments of the invention while ignoring other embodiments that are generally described in the specification as well. Mr. Harrison, it took me a long time to figure out what the dispute was because I didn't have the full context here of what the accused device is and what external or internal means in terms of application to the technology here. I'm presuming, maybe it's in the record, was it in the record and I just missed it? No, Your Honor, there's nothing in the record with respect to the accused devices. Am I correct that your argument as to external would be that it's external to other facilities on the same substrate, but it's not external to the substrate itself? Is that your argument of external? Almost. It's external to certain functionalities, but not necessarily on a separate substrate. In other words, it can be on a separate substrate, but it's not required to be so. It could be external and located on the same substrate. As a matter of advice, it would help us, I think, if you could give us more of that context. We've said that in some cases. You certainly do not construe terms to achieve an outcome based on an infringement analysis, but it sure helps us to have that context when we're trying to figure out the meaning of claim terms. Please proceed. If I may, just perhaps maybe a little bit of background on that. All of the accused devices have the internal functional circuit and external functional circuits managed by separate power management apparatus that are located on a single integrated circuit substrate. That is why the internal versus external distinction is determined for purposes of infringement. Now, in describing the invention, the specification first describes three particular constructs. Isn't it important that the patent says column 6, line 58, the first embodiment represents an internal solution, the second embodiment an external solution. Isn't that pretty clear? That is clear. However, if you apply the second construct as described within the description of the invention section of the specification, the second construct would have both external and internal on the same device. So clearly, it's not as simple as on or off of the same circuit. Otherwise, you're construing a term such that you exclude one of the descriptions of the embodiments. Well, these terms external and internal are pervasive throughout the claim. We have to give consistent meaning to it. And I find Judge Lurie's question reflects a lot of my analysis as well. It seems quite logical to see that as external and internal relative to the substrate. And that would be correct if it were not for the fact that the patent also in the specification specifically describes a construct in which functional circuit A is managed by power management apparatus as described in the invention and functional circuit C is also managed by a power management apparatus. And functional circuit A and functional circuit C communicate on the same substrate through I-O switches. And the patent describes the purpose of the I-O switches fairly clearly and fairly straightforward. An I-O switch in the definition section, column 4, lines 9 to 11, I-O switch used herein for isolating a powered on circuit from a powered off circuit. And then continuing at column 7, lines 52 to 56, the invention adds I-O switches to protect from externally induced latch-up. So in other words, two circuits on the same integrated substrate communicating to each other, if they didn't have those I-O switches, one could induce externally induced latch-up in the other. And they also talk during that same provision there, column 7, lines 52 to 56, that I-O switches electrically isolate the functional circuit, in this case functional circuit A, from external circuitry, in this case functional circuit C. Again, functional circuit A and functional circuit C are described as being on the same integrated substrate. The functional circuit C is never ever described as being external. That's part of the problem. We use internal and external kind of clearly through the spec. I don't disagree. You've got an embodiment that's got two functional circuits on the same substrate. But the problem is you don't use the words internal and external there, which leads me to conclude they're both internal. So maybe you have a disclosed but unclaimed embodiment? Well, the specification does describe why you need I-O switches between the two of them. And it is to prevent externally induced latch-up, and to isolate the functional circuit A from external circuitry, which in this case would be functional circuit C. You are correct. The specification does not say functional circuit C is external to functional circuit A. However, you can certainly read the I-O requirement for I-O switches to be a distinction between those two circuits as being external to one another. If functional circuit A and functional circuit C were subject to the exact same power management apparatus in other words, when functional circuit A powered up, functional circuit C also powered up, and vice versa, there would be no need for I-O switches to isolate those two circuits. Now, what is latch-up? I'm looking at column 7, lines 53 through 56, and that passage is talking about latch-up and protecting the substrate from externally induced latch-up. Yes. Latch-up is a situation where you have two circuits, two functional circuits that are communicating with one another, and they are on a separate power management island is the term for it. Let's call them functional circuit B and functional circuit A, or actually, to avoid confusion, functional circuit 1 is on power management island 1, functional circuit 2 is on power management island 2. Functional circuit 1 and functional circuit 2 communicate to each other. But you can see my concern. It's looking like this is protecting the whole substrate against some external power problem. Well, except that in column 9... First, talk to me just about that column 7 situation. Am I properly interpreting that? What am I missing there? That external latch-up in one construct, in the first construct that's described in the patent, you would be correct. In other words, where the entire substrate is subject to the same power management island or power management apparatus. Then, you would be protecting the entirety of the substrate from latch-up. However, in construct 2, which is described again on column 9, it talks about putting IO switches in between functional circuit A and functional circuit C to avoid externally induced latch-up. Where's that? That is in column 9, and it is lines... 5, 6, 7, line 7 through, appears to be 20. Thank you. And it is, it talks about, in that situation, you don't have to re-up two functional circuits on the same integrated substrate, which are communicating to one another, but are subject to separate power management regimes that you utilize IO switches to avoid this externally induced latch-up issue. Does it refer to externally induced latch-up there? It does, not in that section. I see it referring to latch-up, but not external induced latch-up. And it talks about using IO switches. The patent elsewhere explains that IO switches, on column 7, 52 to 56, the IO switch first protects the integrated circuit against externally induced latch-up. And second, provides for the effective electrical isolation of the IO net from external circuitry. Here they're explaining exactly why you need the IO switches. And it has nothing at all to do with whether the circuits are on a separate substrate. I see I'm in my rebuttal time. Is there anything else? Thank you, Mr. Harrison. Mr. Marcus will give Mr. Harrison back his full rebuttal time, so give Mr. Marcus an additional three minutes if he needs that. Thank you, Your Honor. May it please the Court, my name is David Marcus, and my colleague, Louis Tompros, and I represent Intel. I'm also arguing on behalf of all of the appellees in this consolidated appeal. The District Court correctly resolved both of the claim construction issues. The parts of the specification that Power Management cites and has talked about here today either don't use the words internal or external, or they use them consistently with the District Court's construction. First, Power Management cites the discussion of functional circuits B and C in columns 8 and 9, and argues that those circuits are examples of external functional circuits that are on the same integrated circuit substrate as functional circuit A, the circuit being Power Managed. But the specification never describes functional circuits B or C as external. Instead, the patent simply describes them as separate from the functional circuit that's under Power Management, not as external. There's nothing in the functional circuit B and C examples that's inconsistent with the District Court's correct construction. Under that construction, circuits B and C are both on the same substrate as functional circuit A, and so they're both internal circuits. In its reply brief in here today, Power Management made an argument concerning the phrase externally induced latch-up. They cite the specification's discussion of externally induced latch-up in the summary of the invention. Power Management says that this use of the word externally shows that the patent uses external to refer to different structures on the same integrated circuit substrate, and they cite it to column 7, lines 53 to 56. But as I think Chief Judge Rader recognized, if you look at the full paragraph discussing the I.O. switch that prevents externally induced latch-up at column 7, lines 42 to 55, this particular I.O. switch controls signals sent from off of the chip to the integrated circuit substrate. How do we know that? Because that very paragraph repeatedly states that the particular switch it's discussing or describing is between an I.O. pad and the internal circuit, and the patent defines the pad as the interface to devices off the substrate. And figure 2 shows the pads off the side too, right? That's right, Your Honor. And does column 5 also support you? Tell me what I should take from this language at about line 33, the use of external here where it says, thereby protects the integrated circuit substrate from externally induced latch-up. Clearly the use of the word external there has to be something outside the substrate, right? Or it couldn't make sense in that sentence. That's right, Your Honor, because it's coming in through a pad, and we know that the pad is the interface or the bonding between something external to the substrate and on the substrate, and the patent actually defines pad precisely that way. So on the externally induced latch-up point, the particular I.O. switch that's being described in this section as preventing externally induced latch-up is doing so by blocking signals passed through pads. But you would agree with his argument that there is an embodiment where functional circuit A and C are on the same substrate. Yes, Your Honor, that's right. And it is disclosed here. That's right, Your Honor. It's not disclosed in the context of prior art or something. It seems to be a disclosure wherein they're purporting to indicate this is part of what they believe they've invented, but they've claimed it is another question. But that's the way I read the disclosure. That's right, Your Honor. It has two functional circuits on the same substrate. Now, it's not entirely clear whether that's actually an embodiment or not because it's in this strange section of the patent that's called General Remarks on Content, and some of the examples in there are absolutely can't-be embodiments. So in Column 9, there's one description of no power gates. There's another of no I.O. switches. We know those can't-be embodiments because the claims require I.O. switches and power gates. But even if that were an embodiment. But when you say you're not sure it's an embodiment, I believe the discussion isn't it in part in Column 9? Am I mistaking? It's in Column 9, Your Honor. Well, and isn't that part of what's titled Description of the Invention? It is, Your Honor. But we know that some of the things in Column 9 that are under Description of the Invention, and if you go to Column 9, Lines 20 through 49, it describes examples where there's no power gates or no signal switches. We know that those can't-be embodiments because the claims require switches and power gates. No, but then you're suggesting that a patentee's view of what he's invented in the disclosure is limited to what is claimed. Now, he may only be able to enforce against you what's claimed, but the end of that sentence says, This is considered a trivial rearrangement of the embodiments of the invention and is embraced but not specifically addressed herein. So clearly he believes that this is part of his invention. Whether he claimed it is another question, but I don't know how you can- I think that's probably right, Your Honor. But in any event, the Functional Circuit C example is consistent where the judge's construction of internal and external are consistent with Functional Circuit A and Functional Circuit C both being on the same substrate. Was there any prosecution history, I guess, that would indicate why there would be a disclosed embodiment, which it appears that the inventor thought was part of his invention, where it would be if I give internal and external the meaning you want, it is expressly not claimed. I mean, it's just no argument about it. So is there anything in the prosecution history where they had to disclaim it or give up an embodiment or something like that? No, Your Honor. They only disclaimed the second embodiment in the prosecution history, which was the external solution. Those claims were explicitly abandoned. That's critical, isn't it? They just claimed the second. In what way, Your Honor? Well, I'm trying to translate what you're saying. We should be looking at the claims. The claims are to be interpreted in light of the specification. That's right, Your Honor. Everything in the specification isn't necessarily claimed if it's clear that the claims do not include something in the specification. That's absolutely right, Your Honor. Is that what you want to tell us by looking at the claims? Well, we know that the second embodiment isn't claimed, but it does shed light on the meaning of internal and external because the second embodiment is referred to as an external solution. And there's no question that in that external solution, the power gates and the switches are on a different substrate than the functional circuit. They explicitly call that one. That's in the interpretation of the district court. Is that correct? That's absolutely right, Your Honor. The specification in the prosecution history are entirely consistent with the district court's construction of internal and external. And the district court sort of carefully went through that in its opinion. Now, you say, I believe, that Figure 2 embodies Embodiment 1. That's right, Your Honor. I mean, Figure 2, Claim 1. Yes, Your Honor. Now, where is the external functional circuit in this? It's not shown. Well, if it's not in the picture, how do we find the external functional circuit in this example? I think it explicitly says in the specification that it's not shown, so you can't see it in the figure. So, what role is it playing then? The functional circuit is passing the data signal. The internal functional circuit and the external functional circuit, there's passing the signal. That signal comes in through a pad. That's described in the specification. Every time an external signal is described, it's described as coming in through a pad onto the integrated circuit substrate. It seems to me that we're being led away from the claim which the court construed to the specification which is sort of confused and all over the place. Well, Your Honor, to get back to the claims, the only common reference point for the terms internal and external in the claims is the integrated circuit substrate. The claim begins by saying an integrated circuit substrate, and I'm on column 19, line 25. It starts with an integrated circuit substrate whereon certain elements are constructed, one of which is the claim internal functional circuit. The use of the word whereon there indicates that the internal functional circuit is on the integrated circuit substrate. By contrast, the elements that the claim describes as external, the external power supply, the external functional circuit, and the structure that generates the externally generated electrical control signal are never described as internal or on the integrated circuit substrate. So why, if you're correct, doesn't the word substrate appear in Claim 1? It does, Your Honor. It does? Yes. At line 25, it says an integrated circuit substrate whereon. All right. Okay, I see it. All right. I was looking further on. Okay. And then at the beginning of the next paragraph, too. Okay. Right. Mm-hmm. So I've covered the parts of the specification that Power Management has pointed to, in fact, support, rather than conflict, with Judge Andrew's construction. The second claim construction issue concerns the term internal functional circuit function. Is it correct that we only reach that if we think we want to reverse on the first, meaning the first is controlling and dispositive on everything? That's correct, Your Honor. Excellent. The term internal functional circuit function appears within the larger limitation, submicrosecond recovery of internal functional circuit function upon the assertion of the second externally generated electrical signal. The party's dispute concerns two aspects of this limitation. What function must be recovered in less than one microsecond and what it means to recover that function. In other words, what it means here to be functional. The district court's construction clearly answers both of these questions. First, on the issue of what function must be recovered, the patent expressly defines a functional circuit as a means for performing a specified electronic function or group of electronic functions. So the function that must be recovered is the specified function or group of functions of the internal functional circuit. On the issue of what it means to actually function, the specification explains that the internal functional circuit performs those electrical functions for which it's designed when using signals available from the input-output net. That's at column 12, lines 58 through 60. In other words, the circuit performs its function when it uses the signals it sends to or receives from an external functional circuit. And the specification also explains in column 13 that when power is cut off, those signals can't be sent or received. That's at column 13, lines 54 to 55 and line 65 to 66. In claim 1, those signals are referred to as the first electrical signals. So the circuit performs its specified function using power and the first electrical signals. That's exactly what the district court's construction says. Power management's challenges to the construction in the briefing are both inconsistent and wrong. In its Markman brief, power management made only one argument with respect to internal functional circuit function, that the term didn't need to be construed. In fact, power management argued that our construction was unnecessary because it was indistinguishable from the plain meaning. Power management now claims that the district court's construction includes two improper limitations, that the circuit performs its function using power and electrical signals. But before the district court, power management conceded that both of those limitations were inherently present, stating in its Markman brief that it's self-evident that the internal functional circuit could not perform any function without power and without some input. That's at page A0372 of the joint appendix. Power management still concedes now that power is required. But with respect to the first electrical signals, power management argues that the district court imported that limitation from the specification. That's not right. Claim 1 requires the circuit's function to be recovered upon the assertion of the second externally generated signal. And Claim 1 also explains what the assertion of that second externally generated electrical signal does. It allows both power and the first electrical signals to flow to the internal functional circuit. Ms. Marcus, does this patent expire? No, Your Honor. Then it's not. Doesn't it expire in two weeks, January 21st? Right. Not quite there yet. If I'm asserting a precise date, you could probably bet that I... That I absolutely agree, Your Honor. Thank you. Is there no other litigation ongoing except the Qualcomm case that's been stated? Those are the only ones I'm aware of, Your Honor. Isn't it that there's the one other one here, right? That's Qualcomm. That's the Qualcomm one. Okay, I can't keep track of all the parties. Right, right. Okay. So there's three cases here, and then there's the one that stayed. The three are consolidated for this appeal. The Qualcomm one will... What happens here will determine what happens there. Did this patent get extended? I don't think so, Your Honor. Because April 96 plus 17 years is April 2013. So it's about to expire. I think that's right, Your Honor. If it has to. Unless the court has any further questions, we would ask that the court affirm the constructions and affirm the judgments of non-infringement. Thank you, Mr. Marcus. Thank you very much, Your Honor. Mr. Harrison. Thank you, Your Honor. Mr. Marcus got a pretty compelling point when he looks at the claim language and says the integrated circuit substrate where on the internal functional circuit and so forth. Doesn't that kind of link internal external to the substrate where on it's internal? Am I missing something there? Not necessarily because the language doesn't prohibit other things from also being on that integrated circuit. All that claim requires is that those elements must be on the integrated circuit. It makes no distinction as to whether those other elements are internal or external in terms of that where on language. And that's shown by the word comprising that's used in the claim. I don't understand then. What is it external to if it's not the substrate? It's external to the area for which power management is being applied. That's how that definition is the only definition in which you can have that recognizes that functional circuit C and functional circuit A which the patent describes as being separated by I.O. switches and which the patent describes I.O. switches the purpose of is to avoid externally induced latch up. Those can be on the same integrated circuit substrate. That's the only construction that allows that particular issue. One thing I do want to address that is maybe somewhat helpful. How do you decide the meets and bounds of the area for which power management is being applied? You would have to look at the integrated circuit. Find the power gates, I.O. switches and then the connections between the power gates and I.O. switches to the functional circuits. That would be the meets and bounds of the area for which power management is being applied. It's the only area that allows you to have both functional circuits A and C operating on separate power islands as described in the specification. Adopting the course construction simply reads out that embodiment which is clearly improper. Now, the patent is somewhat confusing and part of the reason the patent is somewhat confusing is because it was prosecuted by a pro se individual. I'm not aware of any cases that hold that to a different standard in review. That's why we have to focus on the claim, correct? Correct. And what we need to look at is the way that the patent, the inventor described his invention is he first laid out the simplest of the embodiments of the invention. That was where the power management was applied to the entirety of the substrate. He then went on and explained that there are three constructs with respect to that particular invention. And those constructs are one, where it is the first embodiment. Two, where you've got separate functional circuits on the same integrated circuit substrate but it doesn't matter. Functional circuit B, as it's referred to in the specification, isn't affected by the power management of functional circuit A. Reading in between the lines on that, you've got to assume then that functional circuit A and functional circuit B do not communicate with one another. Because if they did, they would need to be separated by I.O. switches and it would actually collapse into the third construct which is functional circuit C and functional circuit A, which are managed by separate power management and are separated by I.O. switches to prevent externally induced latch-up. With respect to, I'll be very brief, with respect to the internal functional circuit function, the problem, I think, with the quartz construction and in particular with Apollini's briefing on that, is that it requires the first electrical signal to be an input. We agree that the first electrical signal is required but there's nothing in the specification or file history, nothing in the intrinsic record, that prohibits power from being the sole input to functional circuit A and an electrical signal being generated by functional circuit A that goes off to another functional circuit that would need to be isolated by I.O. switches. Is this issue also raised in the other case too, that Qualcomm case? This issue? All of the cases have basically gone on exactly the same pleading and Qualcomm has just adopted by reference everything that's happening in these consolidated cases. Thank you.